## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | **Chapter 7** |
| **Nina Marie Kinard,** | : | |
| Debtor. | : | **Case No. 13-15224 (JKF)** |
| ────────────────── | | |
| **Tracy Bishop and** | : | |
| **Pamela Brooks and** | | |
| **Peggy Cunningham and** | : | |
| **Natividad Reyes,** | | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **Nina Marie Kinard,** | : | |
| Defendant. | : | **Adversary No. 13-0485** |
| ────────────────── | | |

# MEMORANDUM OPINION

BY: Jean K Fitzsimon
    United States Bankruptcy Judge


## I. INTRODUCTION

The plaintiffs ("Plaintiffs") in this adversary proceeding are former home health care aides who worked for Lee's Industries, Inc. ("Lee's Industries"), which the debtor, Nina Marie Kinard ("Debtor") and her brother, Eric Lamback ("Eric"), co-owned.  As will be explained in more detail below, Plaintiffs filed a class action lawsuit in state court ("State Court Litigation") against, *inter alia*, Lee's Industries, the Debtor and her brother

(collectively the "State Court Defendants"). After a default was entered against the State

Court Defendants but before a monetary judgment was entered against the Debtor, she

filed a bankruptcy case under Chapter 7 of the Bankruptcy Code.

Plaintiffs subsequently commenced this nondischargeability action against the

Debtor alleging that she should be denied a discharge, pursuant to 11 U.S.C. §§ 727(a)(3)

and 727(a)(4)(A),[1] because she: (i) failed to preserve documents from which her financial

condition and/or business transactions might be ascertained; and (ii) made false

statements in her Schedules and Statement of Financial Affairs ("SoFA").

Before the Court is the Plaintiffs' motion ("Motion") for summary judgment. Upon

consideration, the Court concludes that there is no genuine dispute as to any material fact

and that the Plaintiffs are entitled to judgment in their favor as a matter of law. Accordingly,

the Plaintiffs' Motion shall be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

***Plaintiffs, Lee's Industries,
Lee's Home Services
and Lee's Companies***

Plaintiffs are former employees of Lee's Industries, Inc. ("Lee's Industries").

*Complaint ¶ 4; Deposition of Nina Kinard, dated September 27, 2007 ("Dep. 2007") at*

*26-33.* The company, which originally provided janitorial and light pest control services,

was founded in 1986 by the Debtor and her mother. *Id. at 26-27.* When her mother died in

1996, the Debtor and her brother, Eric, became equal owners of the company. *Dep. 2007*

---

[1] Plaintiffs also included a count in their complaint based on § 727(a)(2) but they are not pressing that claim in the Motion.

*at 28-29.*  The Debtor became the President of the company and Eric became the Vice

President.[2]  *Id.*  At all relevant times, Lee's Industries was owned and operated by the

Debtor and Eric. *Id.*

In 2003 or 2004, Lee's Home Health Services, Inc. ("Lee's Home Service") was

formed so that the home health aides could, according to the Debtor, "be put under the

right category."[3]  *Complaint ¶ 4; Deposition of Nina Kinard, dated September 27, 2007*

*("Dep. 2007") at 26-33.*  After Lee's Home Services was formed, the payroll and books

pertaining to the home health care aides was transferred from Lee's Industries to Lee's

Home Services.  *Id. at 31.*  According to the Debtor's 2007 testimony, yet another

company was subsequently created, named Lee's Companies, to which the payroll and

books pertaining to the home health care aides were next transferred.[4]  *Id. at 32-33.*  At her

deposition in 2007, the Debtor was asked to explain the reason for transferring the payroll

and books for the home health aides from one company to another. This colloquy is set

forth below:

---

[2] At her deposition in 2014, the Debtor testified that she was the Vice President of Lee's Industries from 2007 to the present.  *Deposition of Nina Kinard, dated January 8, 2014 ("Dep. 2014") at 18.*

[3] At her deposition in 2007, the Debtor testified that Eric and she co-owned Lee's Home Services just as they co-owned Lee's Industries.  However, at her deposition in 2014, the Debtor testified that: (i) she never had an ownership interest in Lee's Home Services; (ii) her brother was the sole owner of the company; and (iii) she was only an employee of the company.  *Compare Dep. 2007 at 30-33 with Dep. 2014 at 28-29.*  In their Motion, Plaintiffs do not dispute the Debtor's contention that she lacks an ownership interest in Lee's Home Services.  *See Plaintiffs' Memorandum in Support of Motion for Summary Judgment at n.1.*  Consequently, the Court shall assume, for purposes of resolving the Motion, that the Debtor never owned an interest or held a position (other than that of an employee) in Lee's Home Services.

[4] At her deposition in 2007, the Debtor testified that Eric and she operated Lee's Companies.  *Dep. 2007 at 31-33.*  However, at her deposition in 2014, the Debtor testified that she never had an ownership interest in and was never an officer of Lee's Companies.  *Dep. 2014 at 34-35.*  Instead, she testified that an individual by the name of Michael Echols owned the company.  *Id.* In ruling on the Plaintiffs' Motion, the Court shall also assume that the Debtor never owned and was never an officer of Lee's Companies.

Q.      And sometime in 2003 or 2004, did you transfer
        employees who were doing the home health aide –

A.      Yes.

Q.      – from Lee's Industries, Inc., to the payroll on the books
        of Lee's Home Health Services?

A.      Yes.

Q.      And are the home health care aides today on the
        payroll of Lee's Home Health Services?

A.      No.

Q.      And you transferred them back to Lee's Industries at
        some point?

A.      No. Lee's Companies.

Q.      And what was the purpose of the transfer?

A.      It's just that we have different facets and we feel as
        though being a Pennsylvania company, we can open up
        another company, you know when we get good and
        ready, so we did.

        So we transferred Lee's Home Health Aides to Lee's
        Companies.   It's just the way our business goes.  We
        change in facets, so we change the way we do things.

Q.      And the purpose of doing that was an internal
        corporate purpose?

A.      Yes.

Q.      And you moved the home health aides for the purposes
        of payroll from Lee's Industries, Inc., to Lee's Home
        Health to Lee's Companies?

A.      Yes.

Q.      And are they on Lee's Companies now?

4

A.    Yes.

Q.    And they are separate EIN numbers?

A.    Yes.

Q.    And they are separate unemployment numbers?

A.    Yes.

*Dep. 2007 at 32-33.*

**The Plaintiffs' Class Action
Lawsuit in State Court**

In 2007, Plaintiffs filed the State Court Litigation. *Complaint ¶ 4; Exhibit E to*

*Motion for Summary Judgment.*  Plaintiffs alleged that the State Court Defendants

violated the Pennsylvania Minimum Wage Act, 43 P.S. § 333.10 *et seq.*, and the Wage

Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, by failing to pay them, and others

similarly situated, for time spent traveling between clients and by failing to pay them an

overtime premium for hours worked over forty per week. *Complaint ¶ 4; Exhibit E to*

*Motion for Summary Judgment; Dep. 2007 at 26-33.*

**Lee's Industries Ceased
Operating in Summer of 2012**

In or about July of 2012, Lee's Industries ceased doing business and closed its

office.[5]  *Dep. 2014 at 24.*  When the office was closed, some of the company's manual

records were discarded in the trash because they had been destroyed by a flood which

---

[5] Whether Lee's Home Services and Lee's Companies ceased doing business or are still operating is not disclosed in the record.

occurred in March of 2012. *Id. at 22-24.* The remainder of the company's manual records were boxed up and put into a rented space located in Huntington Park. *Id.* The Debtor testified, in particular, that the manual records from 2011 and 2012 were destroyed by the flood. *Id.* However, she denied having any other knowledge regarding "what's at Huntington Park and what's not at Huntington Park." *Id. at 23.*[6]

---

[6] The following excerpt from the Debtor's 2014 deposition contains the questions and the Debtor's answers thereto regarding the current location of Lee's Industries' records:

Q.   Okay. From 2007 until the company stopped doing business, you're saying that there was a ledger book; is that correct?

A.   Yes.

Q.   Okay.   And where is that ledger book kept now?

A.   As far as I know, I can't put my hands on anything because everything was salvaged when we closed the office. I couldn't tell you where it's at.

Q.   Okay.

A.   You know, we just boxed everything up and we put it into a storage – storage room and, you know, it's just a matter of going to get that. But to be honest with you, I couldn't begin to tell you where – where it is.

Q.   Okay. And where is the storage room located?

A.   It's on Huntington Park.

Q.   Okay. Is it a self-storage place?

A.   N. No. It's just – it's just a big room that we – that we rent.

Q.   Okay. And that has all of the corporate financial records for Lee's Industries?

A.   Absolutely not, no.

Q.   No.

A.   A lot of stuff was thrown in the trash when we closed because a lot of stuff got wet. We had a storage room in the back of our — we had a one-room office and we had a storage room in the back of our one-room office, and a

(continued...)

At her deposition in 2014, the Debtor was specifically asked whether any financial information for Lee's Industries was kept on a computer. *Dep. 2014 at 24.* The Debtor testified that the company used Quickbooks to issue checks and record payments owed to it. *Id. at 24-26.* However, she also disclosed that the company's subscription to Quickbooks lapsed in 2012 when the company failed to pay its annual fee. *Id. at 24-25.*[7]

---

[6](...continued)

> lot of that stuff got – got messed up in – in the water. It was a flood in the back of the room, so we just threw a lot of that stuff away.
>
> So, I can't tell you what's at Huntington Park and what's not at Huntington Park.

Q.   Okay. So records for 2011 and 2012, you're saying that you don't know where they are or you're saying they're at Huntington Park?

A.   No. I'm saying they're destroyed. That's what I'm saying.

Q.   From 2011 and 2012?

A.   Yes. Because we had – next to us was a car wash that the owner of the building was renting, and they left their water on one day and they flooded the whole back of the room that we – that we were keeping our stuff in. And everything got – got destroyed. So it's – the 2011, 2012, all that stuff has been actually thrown in the trash. It's destroyed.

Dep. 2014 at 21-24.

[7]      This line of questioning regarding the Quickbooks subscription follows:

Q.   Did you keep any records on the computer as far as financial records? And I'm specifically going to ask, did you keep any records of your accounts receivable on a computer?

A.   What we used to use was Quickbooks.

Q.   Okay.

A.   And the problem with Quickbooks is if you don't pay your yearly fee, they give you a time period that they will hold your information and then they'll destroy it. So I had until September of 2012 to pay them what I needed to pay them. If not, they would have taken everything off the

(continued...)

***Default Judgment and Stipulation in***
***Plaintiffs' State Court Class Action Lawsuit***

On or about December 28, 2012, a default was entered against the State Court

Defendants. *Exhibit E to Motion for Summary Judgment.* A hearing to assess damages

against the State Court Defendants was scheduled for June 19, 2013, but two days prior to

that date, the Debtor and the other State Court Defendants entered into a stipulation ("Joint

Stipulation") with the Plaintiffs regarding damages.[8] *Id.* According to the Joint Stipulation,

---

[7](...continued)

system and destroyed it, and that's what they did.

I can't even go back on the system to get anything for
Lee's Industries unless I give them $389.

Q.    Okay. So did you keep some records in Quickbooks?

A.    Yes.

Q.    Okay.

A.    If we wrote a check or something, it went into
QuickBooks. Anything that we wrote as far as payment
for anything, that was done in QuickBooks[.]

                                    * * *

Q.    If you had money that was due from someone, a provider
or a private pay person, how did you record that?

A.    That was in QuickBooks, yes.

Q.    Okay. And when you issued checks, that was in
QuickBooks?

A.    Yes.

Dep. 2014 at 24-26.

[8]  The Joint Stipulation is dated June 17, 2013. *Exhibit E to Motion for Summary Judgment.*

the parties agreed to the entry of a judgment in favor of the Plaintiffs and against the State

Court Defendants "jointly and severally."[9]

***Cren, Inc.***

During her 2014 deposition, the Debtor was questioned regarding a Pennsylvania

corporation named Cren, Inc. ("Cren").  *See Dep. 2014 at 36-41.*   The Debtor testified that

---

[9] According to the Joint Stipulation, damages among the State Court Defendants  were divided as follows:

1.  For back wages for overtime and travel time in the amount of $1,073,534.80 against Defendants Lee's Industries, Inc, d/b/a Lee's Cleaning Services, Lee's Companies, Inc., and/or Lee's Home Health Services and Lee's Home Health Services, Inc., d/b/a Lee's Industries, Inc. and/or Lee's Companies, Inc., and Nina M. Kinard;

2.  For back wages for overtime and travel time in the amount of $28,058.40 against Defendant Eric Lamback;

3.  For interest or liquidated damages in the amount of $782,382.27 against Defendants Lee's Industries, Inc, d/b/a Lee's Cleaning Services, Lee's Companies, Inc., and/or Lee's Home Health Services and Lee's Home Health Services, Inc., d/b/a Lee's Industries, Inc. and/or Lee's Companies, Inc., and Nina M. Kinard;

4.  For interest or liquidated damages in the amount of $7,014.60 against Defendant Eric Lamback;

5.  For payroll taxes in the amount of $189,478.89 against Defendants Lee's Industries, Inc, d/b/a Lee's Cleaning Services, Lee's Companies, Inc., and/or Lee's Home Health Services and Lee's Home Health Services, Inc., d/b/a Lee's Industries, Inc. and/or Lee's Companies, Inc., and Nina M. Kinard;

6.  For payroll taxes in the amount of $4,952.31 against Defendant Eric Lamback;

7.  For attorneys' fees and expenses of $741,029.61 against Defendants Lee's Industries, Inc, d/b/a Lee's Cleaning Services, Lee's Companies, Inc., and/or Lee's Home Health Services and Lee's Home Health Services, Inc., d/b/a Lee's Industries, Inc. and/or Lee's Companies, Inc., and Nina M. Kinard; and

8.  For attorneys' fees and expenses of $57,422.39 against Defendant Eric Lamback.

*Id*.  Notably, under the terms of the Damages Stipulation, the Debtor and the corporate defendants are responsible for the bulk of the damages.  In comparison, Eric's monetary obligations are minimal.  There is no evidence in the record explaining why the damages were divided in this manner.  Accordingly, the Court will not draw any inference from it.

Cren is a company solely owned by her sister, Cynthia Lamback. *Id. at 36.* According to the Debtor, Cren is a "family business" which is or was primarily used by her sister to sell real estate. *Id. at 36-38.* When Cren was formed and through the date of her 2014 deposition, the Debtor was the Secretary of the company. *Id. at 38-40.* The Debtor never earned any income from Cren. *Id. at 40.* According to the Debtor, no financial records, bank accounts or checkbooks were kept for the company and, if any records happen to exist, her sister would have them. *Id. at 41.*

**The Debtor's Bankruptcy Filing**

On June 13, 2013, which was four days <u>before</u> the Debtor entered into the Damages Stipulation, she filed a *pro se* Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. The Debtor thereafter obtained counsel and, on July 18, 2013, she entered her appearance on the Debtor's behalf. One day later, the Debtor filed her Schedules and SoFA.[10]

Item #13 on Schedule B requires a debtor to list his or her "[s]tocks and interests in incorporated and unincorporated businesses." Debtor's response to this item was none.

On Schedule F, the Debtor listed the Plaintiffs' counsel, Brodie and Rubinsky, P.C., as an unsecured creditor. She listed the amount of the firm's claim as zero. Interestingly, the Debtor did not list the Plaintiffs as creditors anywhere on her Schedules.

Question #1 on the SoFA requires debtors to list their gross income from employment or business for the year in which they file bankruptcy as well as for two prior

---

[10] The Debtor's SoFA indicates that she paid her counsel's fee on July 17, 2013.

10

years.  In response to Question #1, the Debtor stated that she had rental income in 2011 in

the amount of $11,120.  She did not list any income from wages. However, payroll records

for Lee's Industries showed that, in 2011, the Debtor earned $24,150 from the company.

Question #2 on the SoFA requires a debtor to list "all suits and administrative

proceedings to which the debtor is or was a party within **one year** immediately preceding

the filing" of his or her "bankruptcy case."  While the Debtor listed five other lawsuits in

response to Question #2, she did not list the State Court Litigation.

Question #18 on the SoFA states, in relevant part:

> 18 . Nature, location and name of business
>
>     a. *If the debtor is an individual*, list the names,
> addresses, taxpayer identification numbers, nature of the
> businesses, and beginning and ending dates of all businesses
> in which the debtor was an officer, director, partner, or
> managing executive of a corporation, partner in a partnership,
> sole proprietor, or was self-employed in a trade, profession, or
> other activity either full- or part-time within six years
> immediately preceding the commencement of this case, or in
> which the debtor owned 5 percent or more of the voting or
> equity securities within six years immediately preceding the
> commencement of this case.

In response to Question #18 on her original SoFA, the Debtor checked the box for "none."

Question 19 on the SoFA, which is titled "Books, records and financial statements,

has four sub-parts, namely "a" through "b."[11]  These four sub-parts provide:

---

[11]  The instructions immediately preceding Question #19 (and which are applicable to Question #19
through #25) on the SoFA state:

The following questions are to be completed by every debtor that is a corporation or
partnership and by any individual debtor who is or has been, within six years immediately
preceding the commencement of this case, any of the following: an officer, director,
managing executive, or owner of more than 5 percent of the voting or equity securities of a

(continued...)

a.   List all bookkeepers and accountants who within two years
     immediately preceding the filing of this bankruptcy case kept
     or supervised the keeping of books of account and records of
     the debtor.

b.   List all firms or individuals who within two years immediately
     preceding the filing of this bankruptcy case have audited the
     books of account and records, or prepared a financial
     statement of the debtor.

c.   List all firms or individuals who at the time of the
     commencement of this case were in possession of the books
     of account and records of the debtor. If any of the books of
     account and records are not available, explain.

d.   List all financial institutions, creditors and other parties,
     including mercantile and trade agencies, to whom a financial
     statement was issued by the debtor within two years
     immediately preceding the commencement of this case.

On her original SoFA, the Debtor responded to Question #19 by filling in the box for "none"

which was adjacent to each sub-part.

On July 25, 2013, the Chapter 7 Trustee, Gary Seitz, Esquire, conducted the

meeting of creditors for the Debtor's bankruptcy case.  He subsequently filed a Report of

No Distribution.

**The Instant Adversary Proceeding**

Plaintiffs commenced the instant adversary proceeding on September 26, 2013.

Approximately one month later, the Court issued a Pretrial Scheduling Order setting

January 21, 2014 as the deadline discovery.

_____

[11](...continued)
corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or
self-employed in a trade, profession, or other activity, either full- or part-time.  (An individual
or joint debtor should complete this portion of the statement only if the debtor is or has
been in business, as defined above, within six years immediately preceding the
commencement of this case. A debtor who has not been in business within those six
years should go directly to the signature page.)

On December 6, 2013, the Plaintiffs served a Notice of Deposition and a request for documents (the "Document Requests") on the Debtor.[12]  *See Plaintiffs' Motion to Compel Discovery ¶¶ 1-2.* The Debtor failed to respond to the Document Requests and failed to produce the requested documents except for her personal 1040 tax returns for years 2010 and 2011.

On January 8, 2014, the Debtor's deposition was taken as planned despite the Debtor's failure to respond to the Document Requests. *See Plaintiffs' Motion to Compel Discovery ¶¶ 4-5.* About two weeks later, on January 21, 2014, which was the Court-imposed discovery deadline, the Plaintiffs filed a motion to compel regarding their

---

[12]  Plaintiffs requested the Debtor to produce the following documents:

1.     Bank statements for all bank accounts titled in the name of the Defendant, either alone or with another account holder.

2.     Bank statements for all bank accounts titled in the name of Lee's Industries; Lee's Home Health Services, Inc.; and/or Lee's Companies, Inc.

3.     Bank statements for all bank accounts titled in the name of CREN, Inc.

4.     Bank statements for all bank accounts on which the Defendant was or is an authorized signer on the account, whether or not titled in [sic] name of Defendant.

5.     Federal and state tax returns filled by Defendant.

6.     Federal and state tax returns filed by Lee's Industries, Inc.; Lee's Home Health Services, Inc.; and/or Lee's Companies, Inc.

7.     Federal and state tax returns filed by CREN, Inc.

8.     Federal and state tax returns filed by any other entity in which Defendant was an officer, director, managing executive owner of more than five (5) percent of the voting or equity securities of a corporation.

See Exhibit A to Plaintiffs' Motion to Compel Discovery, Docket Entry No. 11.

13

Document Requests.  The Court granted the motion and issued an Order ("Discovery

Order") requiring the Debtor to serve a response and produce all documents responsive to

the Plaintiffs' Document Requests. There is no evidence in the record before the Court that

the Debtor failed to comply with the Discovery Order.

On February 2, 2014, Plaintiffs filed their Motion. Thereafter, the Debtor filed a

response.[13]

Nearly seven months after she filed her bankruptcy case and more than five months

after the Plaintiffs commenced the instant adversary proceeding, the Debtor filed an

amended Schedule B and an amended SoFA.[14] The Debtor amended Schedule B to

show that she is a 50% shareholder in Lee's Industries and explain that it "ceased activity

in July 2012." *See Docket Entry No. 48.*  On her amended SoFA, the Debtor corrected

her response to Question #1 by adding the $24,500 in employment income which she

earned in 2011 from Lee's Industries. She also corrected her response to Question #18 by

listing and providing information on Lee's Industries and Cren.  In addition, she partially

corrected her response to subpart "a" of Question #19 by listing a name, entity and

address in response thereto;[15] however, she still failed to provide any information in

response to the other sub-parts of the question.  In particular, she failed to list the "firms or

individuals" who, at the commencement of her bankruptcy case, possessed records of

---

[13]  By Order dated April 2, 2014, the Debtor was directed to file a response to the Plaintiffs' Motion.
*See Docket Entry No. 18.*

[14]  The Debtor filed these amendments on March 12, 2014.

[15]  The Debtor listed David Noble of HRB Tax Group, Inc. and stated that he had been rendering
services "[f]rom at least 2010 thru Present."  *See Docket Entry No. 49 at #19a.*

14

Lee's Industries.  *See Docket Entry No. 49 at #19c.*  In addition, she failed to disclose that:

(i) some of Lee's Industries' records were damaged in a flood and discarded as a result;

and (ii) that no hard copy of the financial records which the company had maintained on

Quickbooks had been retained when the company's subscription thereto expired.

### III.  STANDARD FOR SUMMARY JUDGMENT

Under Rule 56, a court "shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. " Fed. R. Civ. P. 56(a).   "A fact is 'material' if it 'might affect the outcome of

the suit under the governing law[.] A factual dispute is 'genuine' if the evidence would

permit a reasonable jury to return a verdict for the nonmoving party." Brangman v.

AstraZeneca, L.P., 952 F. Supp.2d 710, 720 (E.D. Pa 2013) (*quoting* Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party moving for summary judgment "bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." Celotex Corp. Catrett, 477 U.S. 317, 323 (1986).  "After the moving party has met its

initial burden, the adverse party's response 'must — by affidavits or as otherwise provided

in this rule — set out specific facts showing a genuine issue for trial.'" Taggart v. Wells

Fargo Home Mortgage, Inc., 2013 WL 3009730, at *2 (E.D. Pa. June 18, 2013) (*citing*

Fed. R. Civ. P. 56(e)(2)).  Importantly, when a court is deciding a motion for summary

judgment, it must construe the facts and inferences in the "light most favorable to the non-

15

moving party." Toll Brothers, Inc. v. Century Surety Co., 2013 WL 3009721, at *4 (E.D. Pa.

June 17, 2013). The court's role is not to weigh the evidence, but only to decide "whether

there is a disputed, material fact for determination at trial." Gray v. Jackson (In re

Jackson), 453 B.R. 789, 795 (Bankr. W.D. Pa. 2011). "To defeat a motion for summary

judgment, a nonmoving party must show that there is more than merely 'a scintilla of

evidence,' supporting his position or 'some metaphysical doubt as to the material facts.'"

Spangler v. City of Philadelphia, 523 Fed. Appx. 142, 145 (3d Cir. 2013) (citations

omitted). In Murray v. JELD-WEN, Inc., 2013 WL 126323 (M.D. Pa. January 9, 2013), the

district court observed:

> Our circuit has stated: ". . . summary judgment is essentially
> 'put up or shut up' time for the non-moving party; the
> non-moving party must rebut the motion with facts in the record
> and cannot rest solely on assertions made in the pleadings,
> legal memoranda, or oral argument."

Id. at *2 (quoting Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## IV.  LEGAL DISCUSSION

Plaintiffs seek to have the Debtor denied a discharge under § 727(a)(3) and

§ 727(a)(4). "Completely denying a debtor his discharge . . . is an extreme step" which

"should not  be taken lightly." Rosen v. Bezner,  996 F.2d 1527, 1531 (3rd Cir. 1993).

Consequently, objections to discharge under § 727(a) are strictly construed against the

creditor and liberally construed in favor of the debtor. Panda Herbal International, Inc. v.

Luby (In re Luby), 438 B.R. 817, 826 (Bankr. E.D. Pa. 2010). However, "a discharge in

bankruptcy is a privilege — not a right — which must be earned." Sonders v. Margolies-

Mezvinsky (In re Morgolies-Mezvinsky), 265 B.R. 681, 690 (Bankr. E.D. Pa. 2001).

## A. Plaintiff's Objection to Discharge Under § 727(a)(3)

### 1. <u>Explanation of the Applicable Law</u>

Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge, unless--
> * * *
>         (3) the debtor has concealed, destroyed, mutilated,
> falsified, or failed to keep or preserve any recorded
> information, including books, documents, records, and papers,
> from which the debtor's financial condition or business
> transactions might be ascertained, unless such act or failure to
> act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).  The purpose of § 727(a)(3) is to insure that the debtor provides the

trustee and his creditors with sufficient information to "'ascertain the debtor's financial

condition and track his financial dealings with substantial completeness and accuracy for a

reasonable period past to present.'" <u>In re Juzwiak</u>, 89 F.3d 424, 427 (7th Cir. 1996)

(*quoting* <u>Bay State Milling Company v. Martin (In re Martin)</u>, 141 B.R. 986, 995 (Bankr.

N.D. Ill. 1992)). "It also ensures that 'creditors are supplied with dependable information on

which they can rely in tracing a debtor's financial history.'" <u>Holber v. Jacobs (In re Jacobs)</u>,

381 B.R. 147, 166 (Bankr. E.D. Pa. 2008) (*quoting* <u>Meridian Bank v. Alten</u>, 958 F.2d

1226, 1230 (3d Cir. 1992)).  See also DeAngelis v. Von Kiel (In re Von Kiel), 461 B.R.

323, 336 (Bankr. E.D. Pa. 2012) (*quoting* Gray v. Jackson (In re Jackson), 453 B.R. 789,

796 (Bankr. E.D. Pa. 2011)) ( " 'As a precondition to the bankruptcy discharge, § 727(a)(3)

requires a debtor to produce information for creditors to determine and track the debtor's

financial . . . transactions for a reasonable time prior to bankruptcy.' ").  "Upon filing for

bankruptcy," a debtor is obligated "to be forthright in providing financial information."

Sonders, 265 B.R. at 690. "[C]omplete financial disclosure [is] a 'condition precedent' to

discharge." Id. (citations omitted).

The court in Exner v. Schultz (In re Schultz), 71 B.R. 711 (Bankr. E.D. Pa. 1987),

aptly expressed the purpose of § 727(a)(3), stating:

> Section 727(a)(3) is intended to allow creditors and/or
> the trustee to examine the debtor's financial condition and
> determine what has passed through a debtor's hands. The
> creditors are entitled to written evidence of the debtor's
> financial situation and past transactions.  Maintenance of such
> records is a prerequisite to granting a discharge in
> bankruptcy, unless the debtor justifies his failure to keep such
> records. The debtor's records need not be perfect, but must be
> kept in an "intelligent fashion."  In re Kottwitz, 42 B.R. 566
> (Bankr. W.D. Mo.1984).  Those records must at least
> reasonably allow for reconstruction of the debtor's financial
> condition to meet the requirements of the Bankruptcy Code.

Id. at 716 (citations omitted except for quotation).

In Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992), the Third Circuit

addressed the record-keeping obligations of a debtor, noting that the Bankruptcy Code

does not require a debtor to maintain a bank account nor "an impeccable system of

bookkeeping."  Id. at 1230.  "Nevertheless," the Third Circuit observed, "the records must '

"sufficiently identify the transactions [so] that intelligent inquiry can be made of them.'" Id. at

1230 (citations omitted).  "A debtor's records must be such that '[c]reditors ... [are] not [ ]

forced to undertake an independent investigation of a debtor's affairs.' " In re Juzwiak, 89

F.3d 424, 429 (7th Cir. 1996) (quoting United States v. Ellis, 50 F.3d 419, 424 (7th Cir.

1995) (citations omitted)); see also PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75,

96–97 (Bankr. W.D. Pa. 2000) (quoting same passage from  In re Juzwiak).

"The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.' " In re Meridian Bank, 958 F.2d 1226, 1230 (3d Cir. 1992) (quoting In re Decker, 595 F.2d 185, 187 (3d Cir. 1979) (citations omitted)).  Oral testimony is not a substitute for written records.  In re Juzwiak, 89 F.3d 424, 429 (7th Cir. 1996).  In order to obtain the benefits of a Chapter 7 discharge, a debtor has "a legal duty to maintain adequate records of his income and expenses."  In re Meridian Bank, 958 F.2d 1226, 1232 (3d Cir. 1992).  Bankruptcy courts have broad discretion "in determining whether a debtor's records are sufficient under § 727(a)(3)."  In re Jackson, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011).

The language of § 727(a)(4) "is not by its terms limited to records belonging only to" the debtor "or are property of an estate, but instead the mandate subsumes all records relating to a debtor's financial affairs."  Blanchard v. Ross (In re Ross), 1999 WL 10019, at *4 (Bankr. E.D. Pa. January 4, 1999).  When a debtor has an equity interest in a closely held corporation, he or she may be required to maintain and preserve adequate books and records of the corporation to satisfy § 727(a)(3).  Jou v. Adalian (In re Adalian), 500 B.R. 402, 407 (Bankr. M.D. Pa. 2013).  When a debtor controls a closely held corporation and is in a position to commingle corporate and personal assets, the books and records of the company are relevant, if for no other reason, because "the debtor is in a position to commingle corporate and personal assets."  See Gray v. Jackson (In re Jackson), 453 B.R. 789, 800 (Bankr. E.D. Pa. 2011).

19

The party objecting to a debtor's discharge under § 727(a)(3) must show that:
(1) the debtor failed to maintain and preserve adequate records; and (2) the failure made it
impossible to ascertain the debtor's financial condition for a reasonable period past to
present.  See Roodhof v. Roodhof, 491 B.R. 679, 688 (Bankr. M.D. Pa. 2013) (*citing*
Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir.1992)).  Notably, § 727(a)(3) does
not require a showing of intent.  Jou v. Adalian (In re Adalian), 474 B.R. 150, 164 (Bankr.
M.D. Pa. 2012); see also Wachovia Bank v. Spitko (In re Spitko), 357 B.R. 272, 305
(Bankr. E.D. Pa. 2006) (no intent to defraud is required under § 727(a)(3)).  It is also
important to note that § 727(a)(3)'s "disclosure requirement extends beyond the property of
the estate to include all 'business transactions' which shed light on the financial condition of
the debtor."  Wachovia Bank v. Spitko (In re Spitko), 357 B.R. 272, 307 (Bankr. E.D. Pa.
2006) (*quoting* Office of Comptroller General of Republic of Bolivia on Behalf of Bolivian
Air Force v. Tractman, 107 B.R. 24, 27 (S.D.N.Y. 1989)).

If a plaintiff proves both prongs of the aforementioned test by a preponderance of
the evidence, then the debtor must justify his/her failure to maintain and preserve adequate
records under the circumstances.  Haupt v. Belonzi (In re Belonzi), 476 B.R. 899, 904
(Bankr. W.D. Pa. 2012).  "The plain language of section 727(a)(3) places the burden on
the debtor to justify the lack of adequate record keeping."  Meridian Bank v. Alten, 958
F.2d 1226, 1234 (3d Cir. 1992)

A determination of justification under § 727(a)(3) "requires the court to look at all of
the circumstances and evaluate everything on a 'case-by-case basis.'"  Eveland v.
Kishbaugh (In re Kishbaugh), 399 B.R. 419, 427 (Bankr. M.D. Pa. 2009) (*quoting* Meridian

Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992)).  "The basic standard is to look at what

a reasonable person would do in similar circumstances.  Such an inquiry should take into

account the sophistication, education, and experience of the debtor."  Eveland v.

Kishbaugh (In re Kishbaugh), 399 B.R. 419, 427 (Bankr. M.D. Pa. 2009) (citations

omitted).  See also Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992) ("The

issue of justification depends largely on what a normal, reasonable person would do under

similar circumstances.").

**2.  Application of the Law to the Facts**

***Whether the Debtor maintained adequate records?***

As one of the principle officers of Lee's Industries and one of its 50% shareholders,

the Debtor had control over the closely held corporation.  Accordingly, the records of Lee's

Industries are relevant in ascertaining the Debtor's financial condition and her business

transactions.  As the Plaintiffs aptly assert, the company's records could reveal "what

income and transfers may have been received by Debtor from the company, whether

expenses of the Debtor were paid by the company, and if, after the company ceased doing

business, there were any assets of the company received by Debtor."  See Plaintiffs'

Memorandum in Support of Motion for Summary Judgment at 9.

As the Debtor explained during her 2014 deposition, certain records for Lee's

Industries are not available because they were destroyed by a flood and subsequently

discarded.  Assuming, for purposes of deciding the Motion, that the Debtor, through no

fault of her own, could not salvage any of the records that were damaged as a result of the

flood, the Debtor would not be denied a discharge for failing to preserve these

21

documents.[16]  See e.g., Cohen v. Bucci (In re Bucci), 97 B.R. 954 (Bankr. N.D. Ill. 1989)

(objection to discharge based on § 727(a)(3) denied where the debtor maintained books

and records but they were destroyed in a flood).

      However, the Debtor testified that Lee's Industries maintained computerized

financial records using Quickbooks.  The Debtor specifically testified that the company

used Quickbooks to record: (1) checks and other payments which it issued; and

(2) payments that were due and forthcoming to it.  Thus, the Quickbook records would

provide significant information regarding the financial transactions and financial condition

of Lee's Industries.  Accordingly, the Debtor's failure to maintain and preserve the

Quickbook records renders it impossible for the Debtor's creditors to ascertain her

financial condition and her business transactions for a reasonable period past to present.

### *Whether the Debtor was justified in failing to maintain and preserve adequate records?*

      The Debtor's asserted justification for not maintaining and preserving the

Quickbook records is that the Plaintiffs have possession of significantly more records for

Lee's Industries than she has or ever had.  The Plaintiffs may indeed possess significant

records from Lee's Industries such as the their personnel files and documents concerning

their wages.  Such records would be relevant to the State Court Litigation.  However, the

Debtor has failed to provide even a scintilla of evidence that Plaintiffs possess or were

ever given financial records showing the financial transactions, account receivables or

financial condition of the company, particularly in the years leading up to the Debtor's

---

[16] For purposes of ruling on this Motion only, the Court is accepting the Debtor's testimony that there was a flood in 2012 which destroyed the 2011 and 2012 manual financial records of Lee's Industries.

bankruptcy filing.  The Debtor cannot withstand the Plaintiffs' Motion by making a sweeping assertion and failing to support it with evidence.

The Debtor's other asserted justification for failing to maintain and preserve the Quickbook records for her company is that she is not a sophisticated business person.[17] The Court is not persuaded by this contention.  While the Debtor may lack some business acumen and a working knowledge of financial terms (she is not an accountant), she founded Lee's Industries with her mother over 20 years ago.  Until the company closed its doors in July of 2013, the Debtor operated and managed the business with her mother or her brother.  Since the company would have been required to maintain financial records so that it could file tax returns every year, the Debtor must be knowledgeable regarding the importance of maintaining and preserving financial records.  Accordingly, the Court concludes that the Debtor was unjustified in failing to maintain and preserve a hard copy of the company's financial records from Quickbooks before its subscription expired.  It would be unreasonable for any business owner who maintained his or her company's records on Quickbooks to allow the company's subscription to expire without preserving a copy of the records.  In the instant situation, it was even more unreasonable for the Debtor not to preserve a copy of the records since, beginning in 2007, the Debtor and her company were embroiled in the State Court Litigation.

---

[17]  The Debtor also argues unpersuasively that her election to file *pro se* Chapter 7 filings indicates "nothing less than [the Debtor's] complete lack of sophistication."  See Debtors' [sic] Response to Motion for Summary Judgment at p. 5.  However, the Debtor provides no explanation for her decision to file *pro se* so; consequently, her decision to do so sheds no light on her business acumen. Moreover, the Debtor is not the only business owner to attempt to file a *pro se* bankruptcy case.  Moreover, there are numerous personal *pro se* bankruptcy filings every year.

## B. Objection to Discharge Based on § 727(a)(4)

### 1. Explanation of the Applicable Law

Plaintiffs also contend that the Debtor should be denied a discharge pursuant to

§ 727(a)(4)(A) on the grounds that she made false statements on her Schedules and

SoFA.  In order for a debtor to be denied a discharge under § 727()(4), "a plaintiff must

establish that: (1) the debtor knowingly and fraudulently; (2) in connection with a case; (3)

made a false oath or account; (4) regarding a material matter."  The Cadle Company v.

Zofko (In re Zofko), 382 B.R. 45, 48 (Bankr. W.D. Pa. 2008).  The purpose of § 727(a)(4)

"'is to allow creditors to have adequate information of the [debtor's] estate without the need

for an examination to determine if the statements are correct.'"  Carto v. Oakley (In re

Oakley), 503 B.R. 407, 424 (Bankr. E.D. Pa. 2013) (quoting In re Hiegel, 117 B.R. 655,

659 (Bankr. D. Kan. 1990)).  Stated differently, "section 727(a)(4)(A) seeks to insure that

the chapter 7 debtor has made full, honest and accurate disclosure of her financial

circumstances to the bankruptcy trustee and creditors have sufficient information for the

proper administration of the chapter 7 case without having to incur the time and expense of

an investigation into her affairs."  Carto, 503 B.R. at 424.

The party objecting to a debtor's discharge based on § 727(a)(4) "must prove an

'actual intent on the part of the bankrupt to hinder, delay, and defraud his creditors.' In re

Topper, 229 F.2d 691, 692 (3d Cir.1956) (citation and internal quotations omitted)." In re

Georges, 138 Fed. Appx. 471, 472 (3d Cir. 2005).  However, a debtor's "reckless

indifference to the truth" is sufficient to deny the debtor "a discharge if the subject matter of

the omission is material to the administration of the bankruptcy."  In re Diloreto, 2006 WL

24

2974156, at *7 (E.D. Pa. October 13, 2006).  "Even an omission or misstatement of material information made with a 'reckless indifference to the truth' may suffice to establish fraudulent intent."  DeAngelis v. Williams (In re Williams), 2012 WL 3564027, at *8 (Bankr. M.D. Pa. August 17, 2012) (citation omitted).  Of course, not all omissions or errors establish fraudulent intent.  A debtor who "is merely careless in preparing schedules and statements or in testimony in connection with a case may receive a discharge absent proof of fraudulent intent."  Id.

## 2. Application of the Law to the Facts

The Debtor made multiple material omissions in her Schedules and SoFA.  On her original Schedules, the Debtor failed to disclose that: (i) she was a 50% shareholder in Lee's Industries; and (ii) the existence of Plaintiffs' claim against her.  Moreover, on her original SoFA, the Debtor failed to disclose that: (i) she earned wages from Lee's Industries in 2011; (ii) the State Court Litigation was pending against her; (iii) she was an officer and 50% shareholder of Lee's Industries; (iv) she was an officer of Cren; and (v) the name and address of individuals in possession of records for Lee's Industries.  She also failed to provide any explanation for the unavailability of books and records for Lee's Industries.

The Debtor's failure to list her 50% shareholder interest in Lee's Industries on Schedule B and her failure to list her 2011 income from the company on her SoFA would not, by themselves, prevent her from receiving her discharge.  If these two errors were the Debtor's only omissions, the Court would be willing to accept the Debtor's explanation that these omissions were honest mistakes.  However, viewed collectively, the omissions on

25

Debtor's Schedules and her SoFA are too many and too material to attribute them to honest mistakes.

Even assuming that the Debtor believed that she did not have to list her shareholder interest in Lee's Industries on Schedule B because the company had ceased operating, Question # 18 on the SoFA specifically required the Debtor to list Lee's Industries since she was an officer and 50% shareholder of the company within the lengthy six year period preceding her bankruptcy filing.[18]  Furthermore, even when the Debtor amended her SoFA, she still failed to provide the information requested by Question #19.

Moreover, the Debtor has provided no explanation for waiting for almost six months after she filed her bankruptcy case to file an amended Schedule B and SoFA.  It is understandable that a debtor, who hastily files her Schedules and SoFA within days after retaining counsel, might need to amend them to correct inaccurate or incomplete answers, but it is not acceptable for a debtor to wait nearly six months after filing her bankruptcy case to do so.

Consequently, the Court concludes, based on the material omissions on the Debtor's Schedules and her SoFA, that she acted with a reckless indifference to the truth sufficient to establish fraudulent intent for the purpose of § 727(a)(4).  The Debtor shall be

---

[18] With respect to Questions #18 and #19 on the SoFA, the Debtor contends that she "failed to understand" that she was required to list even "defunct and/or valueless" businesses. See Debtors' [sic] Response to Motion for Summary Judgment at p. 3.  Perhaps the Debtor "failed to understand" when she read these questions on the SoFA, but she retained and paid for the assistance of counsel to guide her through the bankruptcy process.  If her counsel posed understandable and adequate questions to the Debtor in order to obtain the requisite information to compile her Schedules and SoFA, then her counsel should have had or, shortly thereafter obtained, sufficient information to correctly and adequately complete the forms.

denied a discharge for "knowingly and fraudulently" making a false oath in connection with her bankruptcy case.

### V. Conclusion

Based on the record before the Court on the Motion, there are no disputed issues of material fact and the Plaintiffs are entitled to judgment as a matter of law. The Debtor shall be denied a discharge in her bankruptcy case pursuant to §§ 727(a)(3) and 727(a)(4)(a).

An order consistent with this Memorandum will be entered.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

**Plaintiff's Counsel**
Joshua P. Rubinsky, Esquire
Brodie & Rubinsky, P.C.
121 South Broad Street, Suite 800
Philadelphia, PA 19107

**Defendant's Counsel**
Christian A. DiCicco, Esquire
2008 Chestnut Street
Philadelphia, PA 19103

**Courtroom Deputy**
Ms. Joan Ranieri